**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| LARRY BARRETT, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00102 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

I.     **Introduction**

Plaintiff Larry Barrett brings this case challenging the Social Security

Administration's denial of his applications for Disability Insurance Benefits and

Supplemental Security Income.  He asserts here, as he did before the administration, that

he has been under a benefits-qualifying disability – starting on November 1, 2007 – due to

lung disease; diabetes; problems with lung capacity; numbness in his feet and legs; back,

shoulder, and neck pain; blurred vision; and chest pain caused by use of his hands and

arms.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendations.

#9), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc.

#17), the administrative record (Doc. #6), and the record as a whole.

## II.    Background

### A.    Plaintiff's Testimony

Plaintiff was 37 years old on the alleged disability onset date, which defined him as

a "younger person" for purposes of resolving his DIB and SSI claims.  *See* 20 C.F.R. §§

404.1563(c); 416.963(c)[2].  He has a limited education.  His past relevant employment

includes jobs as a nurse assistant, concrete laborer, laundry folder, and loader.

At his administrative hearing in July 2012, Plaintiff testified he is approximately 5'

9" tall and weighs about 225 pounds.  (*PageID#* 67).  He is divorced and has no dependent

children.  He lives in a mobile home.  He does not have a driver's license but did have one

approximately 10 years ago.  Plaintiff testified he was in special education classes.  He

believes he only has a 4th or 5th grade education.  He stated he has a lot of difficulty

reading and is unable to read a newspaper.  He can only read "some small words."

(*PageID#* 69).

Plaintiff testified he worked in 2004 and 2005 as a nursing assistant, but stopped

after his "health went totally down."  (*Id.*).  He explained he has a number of problems

with his legs, feet, and back.  Plaintiff testified he can only stand for approximately 5 to 10

minutes before he has cramping in his legs and they feel like they're "going to give out."

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

(*PageID#* 71).  Plaintiff estimates he can only sit for 5 to 10 minutes before he feels

uncomfortable.  (*Id.*).  His brother goes to the grocery store for him "and stuff like that . .

." (*Id.*).  Plaintiff mostly cooks using a microwave.

Plaintiff testified that on a typical day he usually goes to bed around 10:00 or 11:00

p.m.  He naps throughout the day, watches the news, sits in his recliner, "snack[s] around,"

and eats lunch with his brother.  (*PageID#* 72).

When cross examined by his counsel, Plaintiff indicated his brother also helps with

chores around the house and takes care of paying his bills.  (*PageID#* 73).  He testified he

visited a psychologist once but did not have any money to continue going and forgets

"exactly what happened."  (*PageID#* 75).  Plaintiff testified he is having trouble with his

diabetes because his sugar levels are "never under control."  (*Id.*).  He knows his sugar

levels are bad because he "sweat[s] and [his] eyes get blurry a lot . . ."  (*PageID#* 76).

Plaintiff also explained his role as a nursing aide.  He testified he would feed, bathe,

and talk to patients.  (*PageID#* 77).  He stated other nurse aides would help him do

required paperwork.  (*Id.*).  He testified he passed the testing to become a nurse's aide

because the instructor "helped me quite a bit."  (*PageID#* 78).  He alleges she "gave me

the [final exam] with the questions and answers . . . but nobody else did and I wasn't

supposed to say nothing about that to nobody."  (*Id.*).  He testified he was a nurse's aide

for approximately 6 years.  He tried to get work as a nurse's aide through a temp service

but they did not hire him because, despite having been a nurse's aide for several years, he

was unable to pass their written test regarding patient care.  (*PageID#* 80).

**B.  Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.  The Commissioner likewise defers to the ALJ's factual recitation.

**III.  "Disability" Defined and the ALJ's Decision**

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[3]  42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, Administrative Law Judge David A. Redmond applied the Social Security

---

[3] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4).

Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "vertebral disorder of the lumbar spine; residuals of thoractotomy for empyema; insulin-dependent diabetes mellitus (IDDM); anxiety disorder; and borderline intellectual functioning (BIF). . . . " (*PageID#* 46).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including sections 12.05 and 12.06. (*PageID#* 50-52).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity[4]:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to: the ability to alternate between sitting and standing as needed; limited to simple tasks featuring no more than occasional personal contact and no production quotas.

(*PageID#* 52-55). The ALJ also concluded at Step 4 that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*PageID#* 53).

---

[4] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The sum and substance of the ALJ's sequential evaluation ultimately led him to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.    Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

546-47 (6th Cir. 2004)).

## V.     Discussion

### A.     Plaintiff's Contentions

Plaintiff contends the ALJ's denial of benefits under Listing 12.05C is without

substantial evidentiary support and is contrary to controlling legal principals.  Plaintiff also

argues the ALJ erred by failing to weigh the opinion of state agency reviewing

psychologist, Dr. Semmelman.  Lastly, Plaintiff asserts the vocational expert's testimony

establishes Plaintiff is disabled even under the residual functional capacity.  (Docs. ##9

and 13).

### B.     Listing 12.05C

The Regulations explain the criteria for mental retardation in § 12.05 of the

Listings:

> The structure of the listing for mental retardation (12.05) is different from
> that of the other mental disorders listings.  Listing 12.05 contains an
> introductory paragraph with the diagnostic description for mental
> retardation.  It also contains four sets of criteria (paragraphs A through D).
>
> If your impairment satisfies the diagnostic description in the introductory
> paragraph and any one of the four sets of criteria, we will find that your
> impairment meets the listing.  Paragraphs A and B contain criteria that
> describe disorders we consider severe enough to prevent your doing any

gainful activity without any additional assessment of functional limitations.  For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).  If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.  Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

. . .

12.05  *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and one of the four sets of criteria...." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citations omitted).

## C.    <u>Analysis</u>

ALJ Redmond concluded Plaintiff did not meet the criteria for paragraph C of

Listing 12.05, "because [he] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  (*PageID# 52*).  Without further explanation, the ALJ also noted that Plaintiff's IQ scores were 75, 66, and 67; Drs. Bonds and Payne diagnosed borderline intellectual functioning; and Plaintiff worked at a semi-skilled position.

The Social Security Act requires an ALJ provide more than bare conclusions in his decision:

> The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for payment under this title [42 USCS §§ 401 et seq.].  Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based . . .

42 U.S.C. § 405(b)(1).  Here, the ALJ merely concluded Plaintiff did not meet Listing 12.05C without providing an appropriate analysis.  *See Reynolds v. Comm'r Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011) ("The ALJ's error was not harmless . . . . In short, the ALJ needed to actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review.") (internal citations omitted); *cf. Sarchet v. Comm'r of Soc. Sec.*, 78 F.3d 305, 307 (7th Cir. 1996) ("the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").  In fact, the very basis for the ALJ's decision remains unclear, and a number of critical questions remain unanswered.  In particular, it is unclear from the

ALJ's decision whether he deemed Plaintiff's IQ scores to be valid but found Plaintiff did not meet the criteria for Listing 12.05C because he did not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function" **or** whether Plaintiff's IQ scores were not valid but Plaintiff did have "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  A third possibility, of course, also remains: the ALJ concluded Plaintiff's IQ scores were not valid **and** Plaintiff also did not have a "a physical or other mental impairment imposing an additional and significant work-related limitation of function." The basis for the ALJ's conclusion, however, remains unclear as the ALJ merely stated, without any analysis to follow, that Plaintiff did not meet Listing 12.05C, "because [he] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."[5]  In light of this failure, the Court is unable to effectively evaluate whether the ALJ's decision is supported by substantial evidence.  *Reynolds,* 424 Fed. Appx. at 416. For these reasons, Plaintiff's Statement of Errors is well taken.[6]

## VI.    Remand is Warranted

---

[5] The ALJ also failed to discuss whether Plaintiff's impairment may have equaled the criteria for Listing 12.05C.  *See* 20 C.F.R. § 404.1526(a)("Your impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment).

[6]  In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions is presently unwarranted.

A remand is appropriate when the ALJ's decision is unsupported by substantial

evidence or when the ALJ failed to follow the Administration's own regulations and that

shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

right. *Bowen*, 478 F3d at 746. Remand warranted by an ALJ's failure to follow the

regulations arises, for example, when the ALJ failed to provide "good reasons" for

rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's

opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the

plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

reasons supported by substantial evidence for finding the plaintiff to lack credibility,

*Rogers*, 486 F.3d at 249.

Under sentence four of  42 U.S.C. §405(g), the Court has authority to affirm,

modify, or reverse the Commissioner's decision "with or without remanding the cause for

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

under sentence four may result in the need for further proceedings or an immediate award

of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is

warranted where the evidence of disability is overwhelming or where the evidence of

disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health &*

*Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the

evidence of disability is not overwhelming and because the evidence of a disability is not

strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Yet, Plaintiff is

entitled to an Order remanding this matter to the Social Security Administration pursuant

to sentence four of §405(g) due to problems set forth above.  On remand, the ALJ should

be directed to: (1) re-evaluate the record under the legal criteria set forth in the

Commissioner's Regulations, Rulings, and as required by case law; and (2) determine

anew whether Plaintiff was under a disability and thus eligible for DIB and SSI during the

period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for

further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.     The Commissioner's non-disability finding be vacated;

2.     No finding be made as to whether Plaintiff Larry Barrett was under a
       "disability" within the meaning of the Social Security Act;

3.     This case be remanded to the Commissioner and the
       Administrative Law Judge under Sentence Four of 42 U.S.C.
       § 405(g) for further consideration consistent with this Report;
       and

4.     The case be terminated on the docket of this Court.


June 4, 2015


                                  s/Sharon L. Ovington
                                    Sharon L. Ovington
                         Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474  U.S. 140 (1985);  *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).